Kenneth Wayne CHASTAIN, Appellant,

v.

STATE of Texas, Appellee.

No. B14–82–062CR.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 25, 1983.

Discretionary Review Refused Feb. 1, 1984.

David Bires, Houston, for appellant.

John B. Holmes, Jr., Houston, for appellee.

Before ROBERTSON, CANNON and PAUL PRESSLER, JJ.

PAUL PRESSLER, Justice.

Appellant appeals his conviction for capital murder. A jury found appellant guilty and punishment was assessed at life imprisonment in the Texas Department of Corrections.

On October 3, 1980, William Pruett stopped at a Mobil self service gas station and car wash on Hillcroft in Houston. Pruett parked his car at the pump nearest the attendant's booth and was filling his car with gasoline when he heard voices behind him. Pruett turned around and noticed two men walking towards the attend-

ant's booth. Pruett heard the attendant say "I don't have the key" several times in a very insistent manner but could hear nothing the two men were saying to the attendant. Pruett then saw, appellant, the shorter of the two men, take a gun, raise it and shoot the attendant. As the men were fleeing the scene, appellant stopped, and he and Pruett looked at each other for a few seconds. Pruett ran the opposite way from appellant. When appellant and his accomplice left the scene, Pruett returned to his car. The attendant then came out of the booth holding his hand across his stomach and said "They shot me. They shot me, but they didn't rob me. Take me to the hospital." On the way to the hospital Pruett stopped a policeman who radioed for an ambulance which ultimately took the attendant to the hospital. The attendant died several days later. At the trial, Pruett testified that he did not hear what appellant and his accomplice said to the attendant. He stated that when the attendant said he did not have the key, his first thought was that the reference was to the key to the restroom.

Dennis Lapinskas, the station manager, arrived at the station about 3:30 on the afternoon of the shooting. He examined the register and determined that no money had been taken. Lapinskas testified that the attendant in question had care, custody and control of the money in the cash register. Lapinskas stated that the service station had a bathroom but that the door to the bathroom could not be locked. The register could be operated only with a key which was found under the register. The key was normally kept in the operating lock of the register.

On November 9, 1981, during voir dire, appellant filed a motion to recuse the presiding judge, Judge William Hatten, pursuant to TEX.REV.CIV.STAT.ANN. art. 200a § 6 (Vernon Supp.1982). The basis of the motion was statements made by Hatten concerning the death penalty on a television talk show called "Houston Weekly". Appellant's contention was that the statements made by Hatten demonstrated a bias against appellant and violated appellants

right to due process, a fair trial, and an impartial jury. Hatten overruled appellant's motion to recuse and his request for a hearing before another judge. On November 11, Hatten entered an order referring the appellant's motion to the Presiding Judge of the Second Administrative District for the assignment of another judge to have a hearing on the motion. The hearing was held on November 16. Each of the witnesses testified that in their opinion the views expressed by Hatten on the program were strictly his personal opinions. No one remembered Hatten stating that he would encourage jurors to invoke the death penalty. Hatten merely stated that in order for the death penalty to be an effective deterrent, it should be invoked more often. At the close of the hearing, appellant's motion to recuse was overruled.

At the time the program on which Hatten spoke was aired, three jurors had already been selected. On November 9, appellant filed a motion for additional voir dire of those three jurors. Such motion was granted and on December 14, additional voir dire of the three jurors was allowed. Each juror testified that he had not seen the program or read anything about it.

On December 3, appellant filed a second motion to recuse, or in the alternative, to reopen the hearing on the first motion and to offer a newly found video tape as evidence. Hatten overruled Appellant's motion without referring it to the Presiding Judge. The court allowed copies of the video tape to be introduced into evidence for inclusion in the record on appeal but would not allow it to be played for the record.

 Appellant brings ten grounds of error. In the first, he contends "the evidence is insufficient to sustain the conviction for capital murder because the state failed to prove the underlying robbery." Appellant contends that no money was taken, no one heard exactly what key the appellant was referring to and since the attendant stated "They shot me. They shot me, but they didn't rob me" the evi-

dence is insufficient to prove the robbery. We disagree.

" 'In the course of commiting theft' within the robbery statute, means conduct which occurs in an attempt to commit, during commission, or in immediate flight after the attempt or commission of theft... The actual commission of the offense of theft is not a prerequisite of the offense of robbery."

*Autry v. State,* 626 S.W.2d 758 (Tex.Cr. App.1982). The fact that no property was taken from the gas station did not render the evidence insufficient to prove that the attendant was murdered while appellant was in the course of attempting a robbery. *See Autry v. State, supra.* Appellant was observed pointing a gun at the attendant with the attendant insisting he did not have the key. The evidence showed that although Pruett initially thought the attendant was referring to the restroom key, the restroom door could not be locked. The evidence also showed that the cash register could be operated only with a key. After the attendant was shot, he ran to Pruett's car and said "They shot me. They shot me, but they didn't rob me." While no one heard appellant or his accomplice actually demand money from the attendant, we conclude that there was sufficient evidence to allow the jury to find that they were acting with intent to obtain control of the money under the attendant's care, custody, and control. Intent to steal may be inferred from actions or conduct. *Johnson v. State,* 541 S.W.2d 185 (Tex.Cr.App.1976); *Banks v. State,* 471 S.W.2d 811, 812 (Tex.Cr.App. 1971). Appellant's first ground of error is overruled.

In his second and third grounds of error, appellant contends the trial court erred in ruling on appellant's first and second motions to recuse without referring the motions to the Presiding Judge of the Administrative Judicial District. Appellant contends all actions taken by the court after the first motion to recuse was filed were void and appellant's conviction should, therefore, be reversed.

The provisions of TEX.REV.CIV. STAT.ANN. art. 200a § 6 (Vernon Supp. 1982) provide that: "A district judge shall request the Presiding Judge to assign a judge of the Administrative District to hear any motions to recuse such district judge from a case pending in his court." However, the filing of a motion to recuse, in itself, does not disqualify the local judge. The statute merely requires that another judge be assigned to determine the merits of the motion. *McLeod v. Harris,* 582 S.W.2d 772 (Tex.1979). In the instant case, a motion to recuse was filed. The judge initially overruled appellant's first motion to recuse, but later complied with the appellant's request and asked the Presiding Judge of the Administrative District to assign another judge to preside over a hearing on the motion. A judge was assigned, a hearing was held, and the motion was overruled. Therefore, any error committed by the trial court in overruling appellant's first motion was harmless.

On December 3, 1981, appellant filed a second motion to recuse or, in the alternative, to reopen the evidentiary hearing on the original motion so that a video tape of the television program in question could be played for the record. Judge Hatten allowed the video tape to be included in the record for appeal but overruled the motion without requesting the Presiding Judge of the Administrative District to assign a judge to hear the second motion. No new grounds for recusing Judge Hatten were raised in the second motion. We realize the mandatory nature of article 200a § 6. However, we do not believe the legislature intended to create a means by which litigants could stop judicial proceedings at will by filing duplictous motions to recuse. *See, Cameron v. Greenhill,* 582 S.W.2d 775, 776 (Tex.1979); *See also, Zima v. State,* 553 S.W.2d 378 (Tex.Cr.App.1977). Had new, unlitigated grounds for recusal been raised by the second motion, Judge Hatten could have been obligated to request the Presiding Judge of the Administrative District to appoint a judge to hear the second motion. This was not the situa-

tion. Appellant's second and third grounds of error are overruled.

■ Appellant in his fourth ground of error, contends that the presiding judge at the hearing on the motion to recuse abused his discretion in overruling appellant's first motion to recuse. Article 5, § II, of the Texas Constitution provides in part that no judge may sit in a case "wherein he may be interested...." The interest which disqualifies a judge "is that interest, however small, which rests upon a direct pecuniary or personal interest in the result of a case presented to the judge or court." *Cameron v. Greenhill, supra.* We have reviewed the evidence and find nothing to indicate that Judge Hatten had any pecuniary or personal interest in the result of appellant's case. The judge merely stated his personal views on the death penalty and its effect as a deterrent. He made no statements which indicated that he believed that appellant should receive the death penalty or that he would encourage this jury to envoke such a penalty. The expression or holding of such an opinion by a judge is not grounds for disqualification. *Templin v. State,* 167 Tex. 605, 321 S.W.2d 877 (Tex. App.1959). It is presumed that a judge will base his judgment upon the facts as they are developed at the trial. *Lombardino v. Firemen's and Policeman's Civil Service Commission of the City of San Antonio,* 310 S.W.2d 651 (Tex.Civ.App.—San Antonio 1958, writ ref'd n.r.e.). Appellant's fourth ground of error is overruled.

In his fifth ground of error, appellant contends that the trial court erred in overruling appellant's request for additional voir dire of juror Manuel Soto, thereby denying him an opportunity to intelligently exercise his premptory challenges. Shortly after Soto had been sworn in as a juror, he revealed that his brother-in-law had been killed in a shooting but that he had not thought to reveal this information on the juror information sheet. The question on the information sheet asked:

Have you or any member of your family been a victim of a crime? *Yes.*

If so, when and what kind of case? *Car theft.* The trial court interrogated Mr. Soto about the incident and determined that the shooting occurred as the result of an argument between "two other persons". Soto's brother-in-law was an "innocent bystander", the shooting was an accident, not the result of a robbery, and Soto said it would have no effect on his verdict. Court was then recessed until the next day without further comment from defense counsel. The next day appellant requested additional voir dire of Soto, regarding the shooting, before the jury as a whole was sworn. The court denied this request stating that he had already questioned Soto about the shooting. Appellant contends juror Soto withheld material information which denied appellant the opportunity to intelligently exercise his challenges. At the time appellant requested additional voir dire, Soto was already sworn as a juror and appellant had exhausted all of his peremptory challenges. Appellant made no request for an additional peremptory challenge nor did he challenge Soto for cause at that time.

■ "When a prejudiced or biased juror is selected without fault or lack of diligence on the part of the defense counsel, such counsel acting in good faith on the juror's responses and having no knowledge of their inaccuracy, a new trial should be granted." *Brandon v. State,* 599 S.W.2d 567, 577 (Tex.Cr.App.1980). *Salazar v. State,* 562 S.W.2d 480 (Tex.Cr.App.1978); However, there is no evidence in this case that Soto was prejudiced against appellant by reason of the shooting death of his brother-in-law. The evidence showed that the death occurred as the result of an accident and was neither intentional nor the result of a robbery attempt. Soto voluntarily revealed the fact of the shooting death of his brother-in-law without such information's being solicited by questions from the defense counsel. We, therefore, find that Soto did not intentionally withhold information so as to constitute misconduct which would warrant a reversal. *Jones v. State,* 596 S.W.2d 134 (Tex.Cr.App.1980). Additionally, there is no evidence that the shooting death of Soto's brother-in-law af-

fected his service as a juror in the case. If appellant wished to show bias or prejudice on the part of Soto, his proper remedy was a motion for new trial with accompanying affidavits by jurors showing jury misconduct. TEX.CODE CRIM.PROC.ANN. art. 40.03(8) (Vernon 1979); *Norman v. State,* 588 S.W.2d 340 (Tex.Cr.App.1979, cert. den. 446 U.S. 909, 100 S.Ct. 1836, 64 L.Ed.2d 261). Absent a showing of harm to the accused, there is no reversible error. *See, Garcia v. State,* 151 Tex.Cr.R. 488, 207 S.W.2d 877, 879 (1948). Appellant's fifth ground of error is overruled.

In his sixth ground of error, appellant contends the trial court abused its discretion in limiting the appellant's voir dire of Gilbert Horton. Appellant spent over an hour questioning Horton as to his understanding of the state's burden of proof at the punishment phase of the trial. The court admonished counsel about the time that he was taking on unrelated matters. Eventually counsel concluded his questioning and moved to strike Horton for cause. The motion was denied and the trial court questioned Horton to clear up what it believed was confusion in Horton's understanding. The trial court refused to allow defense counsel to ask Horton any more questions stating:

> THE COURT: It was obvious to the court, having listened to all of the testimony for over an hour, that he did not understand the question, and that was the reason I took him to clear it up, and he has cleared it up to the court's satisfaction.

At that point defense counsel excepted to the court's ruling. On a bill of exceptions defense counsel outlined the questions he would have asked Horton. The record shows that the questions he sought to ask were repetitious. Reasonable controls may be exercised by the trial judge to limit the questioning of a potential juror. *McManus v. State,* 591 S.W.2d 505 (Tex.Cr.App.1980); One basis for such a limitation is duplication of questioning. *Smith v. State,* 513 S.W.2d 823 (Tex.Cr.App.1974). There was no error in prohibiting duplicitous ques-

tions where investigation into possibly fruitful matters is not entirely prevented. *Smith v. State,* supra. Appellant's sixth ground of error is overruled.

In his seventh ground of error, appellant contends the trial court erred in overruling appellant's objection to the court's conduct during the voir dire examination of Jacquelyn Scarborough and in denying appellant's motion for an additional peremptory challenge. We disagree. During Scarborough's voir dire, the prosecutor objected to one of defense counsel's questions as being repetitious. The objection was sustained. Defense counsel argued that he had a right to ask the same questions that the court and the prosecutor had asked. The court agreed but stated that between the court and the prosecutor they had not taken as much time as had defense counsel. Defense counsel made no objection to the court's comment at that time. At the end of Ms. Scarborough's voir dire, the state accepted her and the defense excused her without further comment. The record reflects that after Ms. Scarborough left, defense counsel told the court that he would like to make an objection to the court's conduct during her voir dire. The court stated "Well, you can do that after we come back from lunch. We are not going to let you just continue to harrass everybody." Defense counsel then objected, stating that he peremptorily struck Ms. Scarborough because she had been tainted by the court's conduct and asked for another peremptory challenge to replace the one that he used on Ms. Scarborough. We do not find that the court's conduct was such as would taint a juror and warrant the granting of an additional peremptory challenge. The only comment made in Ms. Scarborough's presence was to the effect that defense counsel had taken too much time. To constitute reversible error, the court's comment must be reasonably calculated to benefit the State or injure the defendant. *Hernandez v. State,* 530 S.W.2d 563 (Tex.Cr.App.1975); *Varela v. State,* 561 S.W.2d 186, 192 (Tex.Cr.App. 1978). *Smith v. State,* 595 S.W.2d 120 (Tex.Cr.App.1980). Such was not the case

here. Counsel did not object to the court's conduct at that time nor did he challenge Ms. Scarborough for cause. It was incumbent on counsel to object at the time of the objectionable event. Having failed to do so, counsel waived any objection he may have had. *Varela v. State, supra.* Appellant's seventh ground of error is overruled.

Appellant contends in his eighth and ninth grounds of error that the trial court erred in permitting proof of an improper pre-trial identification and photo spread. Pruett had been asked by the prosecutor before trial to step into a court room, observe all of the people there, and to tell him if he recognized anyone in the room. Pruett stated that he recognized appellant. Prior to trial a police detective went to Pruett's home and showed him five photographs. Pruett identified one of them as the appellant. Pruett testified that at the time of the killing he had an unobstructed view of appellant for two to three seconds. At the identification hearing Pruett stated that had he not seen appellant in the district court room in July 1981 and had he not seen the photospread, he still would have been able to recognize appellant as the person he saw commit the offense on October 3, 1980.

> Even where the pre-trial identification procedure was impermissibly suggestive, the in-court testimony of the identification witness would still be admissible as long as the record clearly reveals that the witness' prior identification of the accused was sufficient to serve as an independent origin for the in-court identification.

*Benson v. State,* 487 S.W.2d 117 (Tex.Cr. App.1972); *Van Byrd v. State,* 605 S.W.2d 265, 269 (Tex.Cr.App.1980). Appellant's eighth and ninth grounds of error are overruled.

In his tenth ground of error, appellant complains the trial court erred in "overruling appellant's objection to the use of Annex B court room for the trial of this case." We find no merit to this contention. Appellant cites no authority for this ground of error. Therefore, no error is presented on appeal. *Zuniga v. State,* 490 S.W.2d 577 (Tex.Cr.App.1973). Appellant's tenth ground of error is overruled.

We affirm the judgment of the trial court.