In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00016-CR
______________________________


TERRANCE DEANDRE SHORT, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 248th Judicial District Court
Harris County, Texas
Trial Court No. 987389


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

            Terrance Deandre Short appeals from his conviction by a jury for aggravated robbery. The
trial court assessed punishment at twenty-five years' imprisonment. Short contends on appeal that,
on a number of elements, the evidence was legally and factually insufficient to support the verdict. 
We affirm the judgment of the trial court.
Standard of Review
            We review the evidence for legal and factual sufficiency under the usual standards. In
reviewing the legal sufficiency of the evidence, we view the relevant evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000). In reviewing the factual sufficiency of the evidence, we look to see whether,
considering all the evidence in a neutral light, the jury was rationally justified in finding guilt beyond
a reasonable doubt. Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). 
Facts
            The sequence of events and their importance is in question in this case. There is evidence
the three occupants of a vehicle (Justin Byrd, Isaiah White, and Short) stopped and robbed a
homeless man, Jesse Valdez, at gunpoint at a Texaco station. A police officer was patrolling nearby
when the call came in, and he (and other officers) chased the vehicle Byrd, White, and Short were
occupying until it crashed. All three were arrested in a field near the crash, and a pistol and shotgun
were found in the wrecked vehicle. Valdez testified that, when the three stopped him, Short was in
the front passenger seat and that Short had the pistol, while a person in the back seat had the shotgun. 
There was testimony that Byrd demanded Valdez's possessions while White and Short pointed their
weapons toward Valdez. Valdez had no money, but was carrying a pouch with his medications,
which he emptied onto the ground. Byrd got out of the driver's seat and, while he was picking up
the pills, Valdez went to a pay telephone and called the police.
            Short testified and set out a different sequence of events. He testified that he was inside the
Texaco station with the others and that Valdez came up to them and asked if he could trade his pills
for crack cocaine. Short testified he directed Valdez to Byrd and White. Short testified that, when
he left the station to walk home, he hitched a ride with Byrd and White, that a police car came up
behind them, and the driver "took off," and that he ran away after the crash because he was
frightened. 
            There was also some discussion about the time involved: Valdez stated he had gone to the
Texaco station to catch a bus, but there was evidence that the buses stopped running shortly after
midnight and that the incident occurred at approximately two in the morning. Valdez explained he
knew there was a late bus, but did not know exactly when it ran and that he missed it. 
            There is also one unusual factor seen in the demand made by Byrd of Valdez: the testimony
is that he told Valdez to "unask it" as a demand for his property. Although that is an odd turn of
phrase, it is also clear that both of them understood what was meant: Valdez dropped his
possessions, and Byrd promptly got out of the vehicle to pick them up. 
Issues
            Short contends the evidence was factually and legally insufficient to support his conviction
because the evidence does not show he obtained or maintained control of, or attempted to obtain or
maintain control over, property belonging to Valdez. He also argues the evidence does not support
that conclusion, either as a principal or as a party. He further argues the evidence is insufficient on
the element of the intent to commit theft or attempted theft.
Legal Sufficiency
            In the context of these facts, Tex. Pen. Code Ann. § 29.02(a)(2) (Vernon 2003) provides that
a person commits robbery if, in the course of committing a theft, and with intent to obtain or
maintain control of property, he or she intentionally or knowingly places another in imminent fear
of bodily injury or death. That offense is raised to aggravated status if, while committing a robbery,
the actor uses or exhibits a deadly weapon. Tex. Pen. Code Ann. § 29.03(a)(2) (Vernon 2003). "'In
the course of committing theft' within the robbery statute, means conduct which occurs in an attempt
to commit, during commission, or in immediate flight after the attempt or commission of theft . . . .
The actual commission of the offense of theft is not a prerequisite of the offense of robbery." 
Chastain v. State, 667 S.W.2d 791, 795 (Tex. App.—Houston [14th Dist.] 1983, pet. ref'd) (citing
Autry v. State, 626 S.W.2d 758 (Tex. Crim. App. 1982)). Theft is committed when one unlawfully
appropriates property with intent to deprive the owner of the property. Tex. Pen. Code Ann.
§ 31.03(a) (Vernon Supp. 2004–2005). The jury was also charged with the law of parties, which
provides that a person is criminally responsible for an offense committed by another if, acting with
intent to promote or assist the commission of the offense, he or she solicits, encourages, directs, aids,
or attempts to aid the other person to commit the offense. Tex. Pen. Code Ann. § 7.02(a)(2)
(Vernon 2003).
            There is evidence that Short pointed a gun at Valdez while another person in the car gave
Valdez a command, which Valdez interpreted as a demand for his property. Even if the demand is
considered ambiguous, the intention of Short may be inferred by his action. A verbal demand is not
the talisman of an intent to steal. See Johnson v. State, 541 S.W.2d 185, 187 (Tex. Crim. App.
1976); King v. State, 157 S.W.3d 873, 874 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). 
            According to the testimony of Valdez, he was approached by Short and two other men, who
drew firearms and held them on Valdez. Valdez understood the command given meant for him to
"[g]ive them what I had." He considered that the "guns were doing more talking than anything." The
incident made Valdez "scared for [his] life." Valdez then dropped his pills on the ground, and one
of the three men began picking them up. Valdez called 9-1-1 and reported that he had "just gotten
robbed." Intent to steal may be inferred from action or conduct. See Johnson, 541 S.W.2d at 187
(the defendant pointed a gun at grocery store manager's booth, but officers in the store apprehended
him before any demand or attempted taking of property—defendant's actions were sufficient to allow
a jury to find he was acting with intent to obtain property.); Chastain, 667 S.W.2d at 794 (the
defendant shot a gasoline station attendant who ran from the booth stating, "They shot me, but they
didn't rob me." The evidence was sufficient to find the defendant acted with intent to obtain property
even though no money was taken and no one heard a demand.). Here, the evidence is legally
sufficient for the jury to find that Short, acting as a party, attempted to unlawfully deprive Valdez
of property and intended to obtain the property.
Factual Sufficiency
            There are two ways in which we may find the evidence to be factually insufficient. Zuniga,
144 S.W.3d at 484. First, if the evidence supporting the verdict, considered alone, is too weak to
support the jury's finding of guilt beyond a reasonable doubt, then we must find the evidence
insufficient. Id. Second, if—when we weigh the evidence supporting and contravening the
conviction—we conclude that the contrary evidence is strong enough that the State could not have
met its burden of proof, we must find the evidence insufficient. Id. at 484–85. In our review,
however, we must employ appropriate deference to avoid substituting our judgment for that of the
fact-finder, and any evaluation should not substantially intrude on the fact-finder's role as the sole
judge of the weight and credibility given to witness testimony. Jones v. State, 944 S.W.2d 642, 648
(Tex. Crim. App. 1996). Thus, we can consider only those few matters bearing on credibility that
can be fully determined from a cold appellate record. Johnson, 23 S.W.3d at 8. We must therefore
defer to the jury's conclusion based on matters beyond the scope of our ability to fully discern the
credibility of the witness. Id. In our review, we defer to the responsibility of the trier of fact to fairly
resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from
basic facts to ultimate facts. Clewis v. State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996) (citing
Jackson v. Virginia, 443 U.S. 307, 319 (1979)). The result of this is typically that jury resolutions
of conflicts between witnesses will generally be inviolate, but that we can treat the validity of
testimony as questionable because of other factors, such as adverse conditions affecting the ability
of the witness to observe an assailant. Johnson, 23 S.W.3d at 9. 
            In this case, there is evidence which, if believed by the jury, would support its conclusion that
Short, acting as a party, attempted to obtain property of Valdez with the requisite intent to commit
theft. Short's testimony gave an entirely different version of the events of that night. The jury chose
to believe beyond a reasonable doubt that Valdez's account of the events was correct. We have
reviewed the evidence contrary to the verdict, and after deferring to the jury's determinations based
on the credibility of the witnesses and the weight of the evidence, we cannot conclude that the
contrary evidence is so strong the State could not meet its burden of proof. 
            Accordingly, the evidence is factually and legally sufficient to support the jury's verdict. The
contentions of error are overruled.
            We affirm the judgment of the trial court.
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          August 10, 2005
Date Decided:             August 26, 2005

Do Not Publish



e offense carrying the less severe punishment, count two. See
Patterson v. State, 96 S.W.3d at 433.

 As reformed, the judgment below is affirmed in all respects.



 William J. Cornelius

 Justice*



*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment



Date Submitted: March 8, 2007

Date Decided: May 16, 2007


Publish